**Elaine Easley RUSSELL, Petitioner,**

v.

**LAW ENFORCEMENT ASSISTANCE ADMINISTRATION OF the UNITED STATES of America, Respondent.**

**No. 79–1593.**

United States Court of Appeals, Fifth Circuit. Unit A

Feb. 17, 1981.

Chester John Caskey, Baton Rouge, La., for petitioner.

Barbara L. Herwig, Howard S. Scher, Dept. of Justice, Civ. Div., Appellate Staff, Washington, D. C., for respondent.

Before AINSWORTH, Circuit Judge, KUNZIG, Judge *, and RANDALL, Circuit Judge.

KUNZIG, Judge:

Claimant petitions this court for direct review of the administrative denial of survivor's death benefits under the Public Safety Officers' Benefits Act of 1976, Pub. L.No. 94–430, 90 Stat. 1346 (1976), 42 U.S.C. §§ 3796–3796c (1976) ("PSOBA"). The Government has made a motion to dismiss for want of subject matter jurisdiction. The motion is well-founded. Our ultimate disposition is to transfer this cause to the United States Court of Claims.

PSOBA was passed as an amendment to the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L.No. 90–351, 82 Stat. 197 (1968) (amended version at 42 U.S.C. §§ 3701 et seq. (1976)) ("Crime Control Act"). PSOBA provides, inter alia, that, "In any case in which the Administration [i. e., LEAA] determines . . . that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the Administration shall pay a benefit of $50,000 . . . to the surviving spouse of such officer. . . ." 42 U.S.C. §§ 3796(a) (1976). Claimant is the widow of a police chief who suffered a heart attack and died shortly after physically subduing and arresting a disorderly person. LEAA denied the widow's claim on the ground that, although Chief Russell's death had been precipitated by a traumatic event, the traumatic event did not qualify as a compensable traumatic "injury" within the meaning of PSOBA.[1]

 Federal courts of appeals are not courts of general jurisdiction; they possess only the jurisdiction conferred upon them by acts of Congress. See, e. g., AF of L v. NLRB, 308 U.S. 401, 404, 60 S.Ct. 300, 301, 84 L.Ed. 347 (1940); Dillard v. HUD, 548 F.2d 1142, 1143 (4th Cir. 1977); 9 Moore's Federal Practice, para. 110.01 (2d ed. 1980). PSOBA, however, contains no express judicial review provision and its legislative history does not discuss the matter. As a consequence, claimant advances 42 U.S.C. § 3759(a) (1976), the general appellate review provision enacted with the original Crime Control Act in 1968, Pub.L.No. 90–351, § 511(a), 82 Stat. 206 (1968). The statute, unchanged since passage, provides in relevant part:

> If any applicant or grantee is dissatisfied with the Administration's final action with respect to the approval of its application or plan submitted under this chapter . . . such applicant or grantee may . . . file with the United States court of appeals for the circuit in which such applicant or grantee is located a petition for review of that action.

The crucial issue raised by this provision is whether Chief Russell's widow qualifies as an "applicant" or "grantee". We think not. Thus, there is simply no basis for us to proceed with judicial review in this case.

While the terms "applicant" and "grantee" are nowhere expressly defined in the Crime Control Act—or its amendments—there are sufficient other constructional aids upon which we may rely.

Under the Crime Control Act as originally passed, only "States and units of general local government" were eligible for LEAA funding. See Pub.L.No. 90–351, §§ 201, 301, 82 Stat. 198, 199 (1968), 42 U.S.C.

---

* Judge of the United States Court of Claims, sitting by designation.

1. Under the governing regulations, "claimants" initiate the claims process by filing with LEAA a written statement or form. 28 C.F.R. § 32.-20(a)–(b) (1979). In general, the claim must be filed within one year of the death of the public safety officer. § 32.20(c). Upon the basis of written submissions, § 32.21, LEAA makes an initial finding as to eligibility. § 32.23. The claimant may request formal agency reconsideration of a determination of ineligibility. § 32.24(a). Opportunity for an oral hearing shall be provided. Id. If the claimant is still determined ineligible, the claimant may request that the Administrator review the record and determination. § 32.24(i). The Administrator is empowered to make the final agency determination. Id. See generally 42 U.S.C. § 3796c (1976).

In the instant case, claimant exhausted all available procedures prior to seeking judicial review in this court.

§§ 3721, 3731 (1976).[2] These, then, must have constituted the sole referents for "applicant" and "grantee" as first used. Our basic point is that the subsequent passage of PSOBA cannot be construed as having effected any change in this regard.

Note that despite the advent of PSOBA, § 3759(a) retained language to the effect that "any applicant or grantee . . . dissatisfied with . . . final action with respect to . . . *its* application or plan" may petition for review in the court of appeals. (Emphasis supplied.) Note also that since its inception, § 3759(a) has placed venue in "the circuit in which such applicant or grantee is *located*". (Emphasis supplied.) The emphasized language plainly assumes that entities or jurisdictions, not individuals, are covered. This forcefully overrides any contrary impression which may emanate from the passage of PSOBA. Indeed, had Congress genuinely intended to make § 3759(a) applicable to PSOBA, it most certainly would have modified the troublesome language in the appellate review provision to reflect that fact.

A final, rather telling, consideration is the fact that Congress expressly chose to characterize potential beneficiaries of PSOBA as "claimants", rather than "applicants" or "grantees". 42 U.S.C. § 3796c (1976). "There is . . . a well settled rule of statutory construction that where different language is used in the same connection in different parts of a statute it is presumed that the Legislature intended a different meaning and effect." *Morgan v. Jewell Constr. Co.*, 230 Mo.App. 425, 91 S.W.2d 638, 640 (1936).

We note that the Fourth Circuit previously considered the same issue under discussion here and resolved it in the same manner. Section 3759(a) was held inapplicable to PSOBA denials. *Lankford v. LEAA*, 620 F.2d 35 (4th Cir. 1980).[3]

We recognize that the Supreme Court has enunciated a strong presumption against precluding judicial review, *see Morris v. Gressette*, 432 U.S. 491, 501, 97 S.Ct. 2411, 2418, 53 L.Ed.2d 506 (1977); *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 139–141, 87 S.Ct. 1507, 1510–1511, 18 L.Ed.2d 681 (1967), but find no call for invoking that presumption here. Under 28 U.S.C. § 1491 (Supp. III 1980), "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded upon . . . any Act of Congress. . . ." Pursuant to this general authorization, the Court of Claims has already exercised jurisdiction upon a number of occasions to review PSOBA denials. *See, e. g., Budd v. United States*, No. 82–80C (Ct.Cl. Nov. 14, 1980); *Harold v. United States*, 634 F.2d

2. The purpose of the Crime Control Act was set forth in its opening section as follows:

It is therefore the declared policy of the Congress to assist State and local governments in strengthening and improving law enforcement at every level by national assistance. It is the purpose of this title to (1) encourage States and units of general local government to prepare and adopt comprehensive plans based upon their evaluation of State and local problems of law enforcement; (2) authorize grants to States and units of local government in order to improve and strengthen law enforcement; and (3) encourage research and development directed toward the improvement of law enforcement and the development of new methods for the prevention and reduction of crime and the detection and apprehension of criminals.

Pub.L.No. 90–351, 82 Stat. 197 (1968) (amended version at 42 U.S.C. § 3701 (1976)).

3. On December 27, 1979, Congress enacted the Justice System Improvement Act, an extensive reorganization and revision of the statutes governing LEAA and other related federal arms. Pub.L.No. 96–157, 93 Stat. 1167, 42 U.S.C. §§ 3701 *et seq.* (Supp. III 1980) ("Justice Act"). The Justice Act expressly provides that it "shall not affect any suit, action, or other proceeding commenced by or against the Government before December 27, 1979". 42 U.S.C. § 3797(e) (Supp. III 1980). Since the current proceeding was commenced prior to that date, the Justice Act has no direct bearing upon the problem before us. It is important to note, however, that the contextual evidence in the new law is even stronger in support of the proposition that PSOBA beneficiaries do not fall within the ambit of the appellate review provision. *See* 42 U.S.C. §§ 3701, 3712, 3741–3744, 3751, 3761, 3771–3773, 3782–3785, 3791, 3796–3796c (Supp. III. 1980).

547 (Ct.Cl. 1980). The Court of Claims, of course, is free of the $10,000 jurisdictional limit which applies in federal district court. See 28 U.S.C. § 1346(a)(2) (Supp. III 1980).[4]

Section 1406(c) of Title 28 of the United States Code (1976) provides as follows:

> If a case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, if it be in the interest of justice, transfer such case to the Court of Claims, where the case shall proceed as if it had been filed on the date it was filed in the district court.

In *Dr. John T. MacDonald Foundation, Inc. v. Califano*, 571 F.2d 328, 332 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978), this court held that "[a]lthough [§ 1406(c)] purports to limit the transfer power to the district court", the court of appeals may also effect the transfer directly. This procedure "not only furthers the policies behind § 1406, but also comports with the precepts of judicial economy". *Id.*

In summary, we hold that this court lacks authority for the exercise of judicial review in this case. By contrast, the Court of Claims has "exclusive jurisdiction", *see supra*, to adjudicate the type of claim involved here. In the terms of § 1406(c), it would "be in the interest of justice" to transfer in this instance.

Accordingly, after consideration of the submissions of the parties, with oral argument of counsel, the Government's motion to dismiss is granted, but only as to dismissal from this court. We hereby transfer this cause to the United States Court of Claims in Washington, D.C.

---

**4.** The Government lawyer conceded during oral argument that the Justice Department views the Court of Claims as the appropriate forum for trying these actions.