722 F.2d 834
 232 U.S.App.D.C. 348
 Gloria WYDRA, Petitioner,
v.
LAW ENFORCEMENT ASSISTANCE ADMINISTRATION, U.S. Department
of Justice, Office of Justice Assistance, Research
and Statistics, and United States of
America, Respondents.
 No. 83-1287.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 10, 1983.
Decided Dec. 2, 1983.
 
 Petition for Review of an Order of the U.S. Department of Justice, Office of Justice Research and Statistics.
 Howard K. Cherna, Miami, Fla., for petitioner.
 Carlene V. McIntyre, Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen. and Barbara L. Herwig, Dept. of Justice, Washington, D.C., were on brief, for respondents.
 Before WILKEY and WALD, Circuit Judges, and MACKINNON, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 This is an appeal from a denial of benefits under the Public Safety Officers' Benefits Act (PSOBA), 42 U.S.C. Secs. 3796-3796c, by the Law Enforcement Assistance Administration (LEAA). We must first determine whether we have jurisdiction to review the LEAA's decision. Two courts of appeals have previously determined that they did not have jurisdiction to review decisions under the PSOBA, see Russell v. Law Enforcement Assistance Administration, 637 F.2d 354 (5th Cir.1981) [hereinafter cited as Elaine Russell ]; Lankford v. Law Enforcement Assistance Administration, 620 F.2d 35 (4th Cir.1980), while one court has come to the opposite conclusion. See Russell v. Law Enforcement Assistance Administration, 637 F.2d 1255 (9th Cir.1980) [hereinafter cited as Donna Sue Russell ]. Since these three decisions, Congress has made minor revisions in the sections construed. We conclude that under the statute as it now stands we do not have jurisdiction to hear this appeal. However, because the United States Claims Court does have jurisdiction, we will transfer this action to the Claims Court.
 
 I. BACKGROUND
 
 2
 William Wydra, a member of the Metro-Dade County, Florida, Public Safety Department, accidentally shot and killed himself on or about September 4, 1981, in the course of an overnight trip made in order to accompany an extradited prisoner from New Jersey to Florida. His widow filed a claim with the LEAA for death benefits pursuant to the Public Safety Officer's Benefits Act of 1976, 42 U.S.C. Secs. 3796-3796c.[1] The claim was initially denied on April 29, 1982, on the basis of a determination that the injury did not occur "in the line of duty" as required by the statute.[2] This determination was reversed by a hearing officer after a hearing conducted pursuant to agency regulations.[3] However, on January 24, 1983, the Acting Administrator of the LEAA rendered a final agency decision against the claimant, finding that Officer Wydra's death did not occur in the line of duty.[4] The petitioner then filed an action in this court for judicial review of the LEAA's denial of benefits.II. JURISDICTION
 
 
 3
 The LEAA contends that this court is without jurisdiction to review its decision. It argues that no provision for judicial review appears in the PSOBA and that the legislative history indicates no congressional intent to provide for judicial review in this court. It argues further that section 3785, relied on by the petitioner, establishes jurisdiction in the court of appeals only to review decisions concerning the various law enforcement grants administered pursuant to subchapters I through VII, and not decisions concerning benefits under the PSOBA, contained in subchapter XII. We agree.
 
 
 4
 This court has only the jurisdiction conferred upon it by Congress. See, e.g., American Federation of Labor v. NLRB, 308 U.S. 401, 404, 60 S.Ct. 300, 302, 84 L.Ed. 347 (1940); Elaine Russell, 637 F.2d at 355. There is nothing in the language or legislative history of the PSOBA, 42 U.S.C. Secs. 3796-3796c, concerning judicial review or the forum in which it shall be granted. The claimant therefore relies on 42 U.S.C. Sec. 3785,[5] the provision governing appellate review under certain sections of chapter 46, concerning "Justice System Improvements," in which the PSOBA is codified. Although section 3785 does not explicitly apply to benefits decisions under section 3796, the claimant argues that it may reasonably be construed to extend to those decisions.
 
 
 5
 Under the predecessor of section 3785, 42 U.S.C. Sec. 3759,[6] the circuits were divided on the question of whether its provisions for judicial review applied to final LEAA decisions denying benefits under the PSOBA sections of chapter 46. The Fourth Circuit decided in Lankford, 620 F.2d 35, that neither section 3759 nor any other section of chapter 46 conferred jurisdiction on the circuit courts to review decisions under the PSOBA.
 
 
 6
 The Ninth Circuit reached a contrary conclusion, however, in Donna Sue Russell, 537 F.2d 1255. The court assumed that if it were without jurisdiction then no court would have jurisdiction. Id. at 1259. Relying heavily upon the presumption against the wholesale preclusion of review of agency action,[7] the court construed what it read as the ambiguous language and inconclusive legislative history of section 3759 to confer jurisdiction on the circuit courts to review decisions under the PSOBA. See id. at 1259-60.
 
 
 7
 Shortly thereafter, the Fifth Circuit decided Elaine Russell, 637 F.2d 354, in which it agreed with the Fourth Circuit decision in Lankford that it had no jurisdiction. Id. at 356-57. Although the court in Elaine Russell did not take note of the Donna Sue Russell decision, it noted, contrary to that decision, that the case could be heard by the United States Court of Claims; it was thus unencumbered by the presumption against precluding judicial review. The court accordingly transferred the action to the Court of Claims.[8]
 
 
 8
 We are faced with a slightly different statutory scheme than that which gave rise to this split among the circuits. On December 27, 1979, Congress enacted the Judicial System Improvement Act, which revised and reorganized statutes governing the LEAA and related federal agencies. Pub.L. No. 96-157, 93 Stat. 1167-1223, 42 U.S.C. Secs. 3701-3797. This enactment did not change PSOBA sections 3796 through 3796c. However, it did reorganize the sections to which the Fourth, Fifth and Ninth Circuits looked to determine whether the circuit courts had jurisdiction. There is no evidence in the legislative history that Congress intended to affect, or even considered, the application of those sections to PSOBA claims. We must therefore turn to an examination of the language and structure of those sections.
 
 
 9
 Before undertaking this inquiry, however, we note our agreement with the conclusion of the Fifth Circuit in Elaine Russell, 637 F.2d at 356, that we need not invoke the strong presumption against precluding judicial review. There can no longer be any doubt that the Claims Court, as it is now called,[9] has jurisdiction to review decisions under the PSOBA. 28 U.S.C. Sec. 1491 provides that "[t]he United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded upon ... any Act of Congress." Appellate courts, the former Court of Claims and the new Claims Court have recognized the application of this language to claims for benefits under the PSOBA. See, e.g., Elaine Russell, 637 F.2d at 356; North v. United States, 555 F.Supp. 382 (Cl.Ct.1982); Smykowski v. United States, 647 F.2d 1103 (Ct.Cl.1981); Harold v. United States, 634 F.2d 547 (Ct.Cl.1980). Indeed, the LEAA has taken the position before this court that jurisdiction lies in the Claims Court.[10] In our examination of the language and legislative history of the relevant statutory sections, therefore, we need not focus upon whether there is a clear expression of congressional intent to preclude review.[11] We must determine simply whether the statute is most reasonably construed as conferring jurisdiction on this court to review claims under the PSOBA.
 
 Section 3785 provides in part, as follows:
 
 10
 (a) If an applicant or recipient is dissatisfied with a final action with respect to section 3783, 3784, or 3789(c)(2)(G) of this title, such applicant or recipient may, within sixty days after notice of such action, file with the United States court of appeals for the circuit in which such applicant or recipient is located, or in the United States Court of Appeals for the District of Columbia, a petition for review of the action.
 
 
 11
 We begin with the obvious, though not decisive, observation that Congress could have clearly expressed its intent to afford judicial review in the courts of appeals either by explicitly providing for it in the PSOBA itself or by adding the PSOBA--sections 3796 through 3796c--to the list in section 3785 of statutory sections under which review is provided. It did neither, however. Although it is still possible that section 3785 implicitly provides for review of final agency action under the PSOBA, we investigate this possibility in light of Congress' failure to take either of two very simple steps to avoid any ambiguity or misunderstanding about the availability of review in the circuit courts.
 
 
 12
 We must determine whether any of the three designated statutory sections for which review is authorized--3783, 3784, or 3789d(c)(2)(G)--can fairly be read to encompass decisions under the PSOBA.[12] The last statutory section referred to in section 3785, section 3789d(c)(2)(G), provides for sanctions against discrimination in programs funded under the chapter, and is not relevant here. Section 3783, set forth in the margin,[13] cannot reasonably be construed to apply to decisions concerning PSOB death benefits. First, such a construction would require us to read "grant application" to apply to benefits claims under the PSOBA although "recipient" or "grantee," as used in the same paragraph, cannot possibly encompass successful claimants under the PSOBA: Section 3783 provides for termination of grants for failure to fulfill certain ongoing requirements; benefits awarded under the PSOBA, however, are one-time lump sum payments not subject to any conditions or limitations on the successful claimant's subsequent conduct.
 
 
 13
 The petitioner's reading of "grant application" also conflicts with the consistent use, both in the PSOBA and in the LEAA regulations passed pursuant to the PSOBA, of the terms "benefit" rather than "grant,"[14] "claimant" or "beneficiary" rather than "applicant" or "recipient,"[15] and "claim" rather than "application."[16] Both the Lankford and Elaine Russell decisions emphasized this same discrepancy between the terms used in the PSOBA and those used in the sections on which jurisdiction was purportedly based, invoking the common sense principle of statutory construction that "clear use of different terminology within a body of legislation is evidence of an intentional differentiation." Lankford, 620 F.2d at 36; accord Elaine Russell, 637 F.2d at 356.
 
 
 14
 In addition, in order to construe section 3783 in petitioner's favor we would have to ignore the inconsistency between the specific requirements in parts (b) and (c) of section 3783 of notice and a hearing "on the record," and the general mandate to the LEAA in section 3796c "to establish such rules, regulations, and procedures as may be necessary to carry out the purposes of this subchapter." Not surprisingly, the regulations passed by the LEAA pursuant to the PSOBA contain procedural provisions inconsistent with the requirements of section 3783 for decisions concerning law enforcement grants. For example, section 3783(c) provides for a second hearing, whereas PSOBA regulations provide only for a review of the record by the LEAA administrator after an opportunity for additional comment by the claimant.[17] The existence of two different sets of administrative machinery undermines the claimant's attempt to fit PSOBA claims within section 3783.
 
 
 15
 The petitioner relies primarily on section 3784, set out in the margin,[18] which concerns finality of determinations. This section cannot reasonably be construed to encompass decisions on PSOBA claims. Although its language may initially appear sufficiently general to take in functions vested in the LEAA by the PSOB provisions of the chapter, it is more reasonable to read section 3784 as coextensive with the preceding section 3783. We do not believe it is reasonable to read a provision that purports to limit review, by providing that agency determinations shall "be final and conclusive upon all applications, except as provided herein," as expressing the intent to broaden review by bringing all agency decisions within the scope of the judicial review provisions of section 3785. The reference in section 3784 to "applications" further bolsters the narrower reading.
 
 
 16
 Finally, the entire structure of chapter 46 on Justice System Improvement is consistent with the interpretation of the judicial review provisions of section 3785 as applying only to decisions concerning grants for law enforcement activities and not extending to the PSOBA. Sections 3783, 3784, 3785, and 3789a are all contained in subchapter VIII entitled "Administrative Provisions." This subchapter follows subchapters I through VII, each of which concerns, in part, the administration of various grants to state and local governments and community groups for criminal law enforcement activities.[19] The PSOBA is contained in subchapter XII, which has its own separate section devoted to administrative provisions--section 3796c.
 
 III. CONCLUSION
 
 17
 It is clear from our examination of the language, structure, and legislative history of the PSOBA and section 3785 that Congress did not confer jurisdiction on this court to review LEAA decisions concerning death benefits under the PSOBA. However, as we indicated earlier, the Claims Court does have jurisdiction to review the LEAA's decision.
 
 
 18
 When Congress passed the Federal Courts Improvement Act of 1982, it enacted a broad provision permitting "transfer to cure lack of jurisdiction." 28 U.S.C. Sec. 1631.[20] The Act empowers any federal court, when an action or appeal is filed over which it lacks jurisdiction, to transfer such action to the appropriate court whenever "it is in the interest of justice." The action or appeal then proceeds in that court as if it had been filed on the same date on which it was actually filed in the transferring court. Transfer to the Claims Court would clearly be "in the interest of justice" in this case.[21] Accordingly, the case is hereby transferred to the United States Claims Court.
 
 
 19
 Judgment accordingly.
 
 
 
 [1]
 Section 3796(a) provides that "[i]n any case in which the Administration determines ... that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the Administrator shall pay a benefit of $50,000," in the case at hand, to the officer's surviving spouse
 
 
 [2]
 The initial decision is quoted in the Hearing Determination, Brief for Appellant App. 4 at 2
 
 
 [3]
 28 C.F.R. Sec. 32.24 provides for a hearing; hearing procedures for PSOB claims are set out in the appendix to 28 C.F.R. Sec. 32. The hearing officer's decision appears in Brief for Appellant App. 4
 
 
 [4]
 Brief for Appellant App. 1
 
 
 [5]
 Section 3785 is quoted in relevant part infra at 837
 
 
 [6]
 Section 3759 provided in relevant part as follows:
 (a) If any applicant or grantee is dissatisfied with the Administration's final action with respect to the approval of its application or plan submitted under this Chapter, or any applicant or grantee is dissatisfied with the Administration's final action under section 3757 or section 3758 of this title, such applicant or grantee may, within sixty days after notice of such action, file with the United States court of appeals for the circuit in which such applicant or grantee is located a petition for review of that action.
 Omnibus Crime Control and Safe Streets Act of 1968, Sec. 511, 82 Stat. 206 (amended 1979).
 
 
 [7]
 See, e.g., Morris v. Gressette, 432 U.S. 491, 501, 97 S.Ct. 2411, 2418-19, 53 L.Ed.2d 506 (1977); Barlow v. Collins, 397 U.S. 159, 166-67, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970); Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)
 
 
 [8]
 The court found authority for its order in former 28 U.S.C. Sec. 1406(c), which provided as follows:
 If a case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, if it be in the interest of justice, transfer such case to the Court of Claims, where the case shall proceed as if it had been filed on the date it was filed in the district court.
 28 U.S.C. Sec. 1406(c) has been repealed and replaced with a broad provision for transfer between any two federal courts. See infra at 840 & n. 20.
 
 
 [9]
 In 1982, Congress passed the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25-58, codified in scattered sections of 28 U.S.C. The Act, effective October 1, 1982, created a new article III court, the United States Court of Appeals for the Federal Circuit, by merging the Court of Claims and the Court of Customs and Patent Appeals. The trial jurisdiction of the Court of Claims is now exercised by the United States Claims Court, an article I court. See S.Rep. No. 97-275, 97th Cong., 1st Sess. 2, U.S.Code Cong. & Admin.News 1982, p. 11
 
 
 [10]
 See Brief for Appellee at 16-17
 
 
 [11]
 This was the premise of the Ninth Circuit in examining the language and legislative history of the statutory scheme. Donna Sue Russell, 637 F.2d at 1259
 
 
 [12]
 The current statute in this respect differs from the previous statute, which permitted review "[i]f any applicant ... is dissatisfied with the Administrator's final action with respect to the approval of its application ... submitted under this chapter " (emphasis added). The Fourth Circuit concluded that the deletion in the 1979 amendments of this reference to chapterwide scope "made clear beyond cavil what [it] had determined to be the meaning of the statutes as they stood" before the amendments. Lankford v. LEAA, 620 F.2d at 37
 
 
 [13]
 Sec. 3783. Notice and hearing on denial or termination of grant
 (a) Payments to recipients; limitation, reduction, or termination
 Whenever, after reasonable notice and opportunity for a hearing on the record in accordance with section 554 of Title 5, the National Institute of Justice, the Bureau of Justice Statistics, or the Law Enforcement Assistance Administration finds that a recipient of their respective assistance under this chapter has failed to comply with--
 (1) any provision of this chapter;
 (2) any regulations or guidelines promulgated under this chapter; or
 (3) any application submitted in accordance with the provisions of this chapter, or the provisions of any other applicable Federal Act;
 they, until satisfied that there is no longer any such failure to comply, shall--
 (A) terminate payments to the recipient under this chapter;
 (B) reduce payments to the recipient under this chapter by an amount equal to the amount of such payments which were not expended in accordance with this chapter; or
 (C) limit the availability of payments under this chapter to programs, projects, or activities not affected by such failure to comply.
 (b) Notice of action; reasons for action; hearing or investigation; finality of findings and determinations
 If a State grant application filed under subchapter IV of this chapter or any grant application filed under any other subchapter of this chapter has been rejected or a State applicant under subchapter IV of this chapter or any applicant under any other subchapter of this chapter has been denied a grant or has had a grant, or any portion of a grant, discontinued, terminated or has been given a grant in a lesser amount that such applicant believes appropriate under the provisions of this chapter, the National Institute of Justice, the Bureau of Justice Statistics, or the Law Enforcement Assistance Administration, as appropriate, shall notify the applicant or grantee of its action and set forth the reason for the action taken. Whenever such an applicant or grantee requests a hearing, the National Institute of Justice, the Bureau of Justice Statistics, the Law Enforcement Assistance Administration, or any authorized officer thereof, is authorized and directed to hold such hearings or investigations, including hearings on the record in accordance section 554 of Title 5, at such times and places as necessary, following appropriate and adequate notice to such applicant; and the findings of fact and determinations made with respect thereto shall be final and conclusive, except as otherwise provided herein.
 (c) Rehearings; regulations and procedures; presentation of additional information
 If such recipient is dissatisfied with the findings and determinations of the Law Enforcement Assistance Administration, the Bureau of Justice Statistics, or the National Institute of Justice, following notice and hearing provided for in subsection (a) of this section, a request may be made for rehearing, under such regulations and procedures as such Administration, Bureau, or Institute, as the case may be, may establish, and such recipient shall be afforded an opportunity to present such additional information as may be deemed appropriate and pertinent to the matter involved.
 
 
 [14]
 See, e.g., 42 U.S.C. Sec. 3796(a)-(f); 28 C.F.R. Sec. 32.23-.24
 
 
 [15]
 See, e.g., 42 U.S.C. Sec. 3796c(a); 28 C.F.R. Sec. 32.10-.15
 
 
 [16]
 See, e.g., 42 U.S.C. Sec. 3796c(a); 28 C.F.R. Sec. 32.19-.22
 
 
 [17]
 28 C.F.R. Sec. 32.24(h), (i)
 
 
 [18]
 Sec. 3784. Finality of determinations
 In carrying out the functions vested by this chapter in the Law Enforcement Assistance Administration, the Bureau of Justice Statistics, or the National Institute of Justice, their determinations, findings, and conclusions shall, after reasonable notice and opportunity for a hearing, be final and conclusive upon all applications, except as otherwise provided herein.
 
 
 [19]
 42 U.S.C. Secs. 3711-3775
 
 
 [20]
 The Federal Courts Improvement Act of 1982, see supra note 9, repealed 28 U.S.C. Sec. 1406(c), see Pub.L. No. 97-164, Sec. 132, 96 Stat. 39, under which the Fifth Circuit transferred the Elaine Russell case to the Court of Claims. See supra at 5 & n. 836. At the same time, the Act added 28 U.S.C. Sec. 1631 granting broad transfer powers. Section 1631 now provides:
 Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.
 Pub.L. No. 97-164, Sec. 301(a), 96 Stat. 55.
 
 
 [21]
 The government has taken the position that transfer to the Claims Court is the proper disposition of this case. Brief for Appellee at 17