**SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**Kevin Michael McCARTHY; Thomas William Blodgett, Defendants–Appellants.**

**No. 02–55201.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2003.

Filed March 3, 2003.

Gregory Sherwin, Fields, Fehn & Sherwin, Los Angeles, CA, for the defendants-appellants.

Thomas Karr, Special Trial Counsel, United States Securities and Exchange Commission, Washington, DC, for the plaintiff-appellee.

Before D.W. NELSON, WARDLAW and FISHER, Circuit Judges.

## OPINION

D.W. NELSON, Senior Circuit Judge.

Kevin McCarthy and Thomas Blodgett appeal the district court's order granting the Application of the United States Securities and Exchange Commission (the "Commission") seeking enforcement of a Commission order. The Commission affirmed a disciplinary decision of the National Association of Securities Dealers ("NASD"), fining McCarthy and Blodgett $48,892.37 and $50,453.33 respectively. Appellants appeal on the grounds that (1) the Commission does not possess standing to file this Application; (2) the district court erred in utilizing summary proceedings not authorized under the Federal Rules of Civil Procedure; (3) the district court failed to provide them with an opportunity to respond to the Commission's Application; and (4) Appellants were not permitted to assert affirmative defenses to the Commission's Application in district court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Securities Exchange Act of 1934*

Congress enacted the Securities Exchange Act of 1934 (the "Exchange Act") to "achieve a high standard of business ethics in the securities industry." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). The Act allows for the creation of "national securities associations" for brokers and dealers and authorizes self-regulating organizations ("SROs") within the securities industry to self-regulate their

members, subject to federal oversight by the Commission. 15 U.S.C. § 78o–3(a).

All such associations must be approved and registered by the Commission. The Exchange Act mandates that such associations promulgate rules designed, *inter alia,* to

> prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, to remove impediments to and perfect ... [the] national market system, and, in general, to protect investors and the public interest.

*Id.* § 78o–3(b)(6).

To date, only one such organization has ever received Commission approval—the NASD, a private nonprofit Delaware corporation. The Exchange Act requires the NASD, as a national securities association, to enforce its rules and impose sanctions on members that violate NASD rules and/or the Exchange Act. 15 U.S.C. § 78o–3(b)(7). NASD disciplinary orders are subject to review by the Commission. This system of joint public-private regulation of the securities industry reflects Congress's intent "to establish a 'cooperative regulation' where [securities] associations would regulate themselves under the supervision of the SEC." *Jones v. SEC,* 115 F.3d 1173, 1179 (4th Cir.1997) (quoting S.Rep. No. 75–1455, at 3–4 (1938); H.R.Rep. No. 75–2307, at 4–5 (1938)). Commission decisions are appealable to the United States Courts of Appeals. 15 U.S.C. § 78y(a)(1).

### B. *McCarthy and Blodgett*

McCarthy and Blodgett were officers of Atlanta–One, Inc. Atlanta–One specialized in the trade of foreign currency options on the Philadelphia Stock Exchange. McCarthy served as its president and was registered as a general securities principal. Blodgett was the company's vice president and was registered as a securities principal and an options principal.

Between April and November 1990, Atlanta–One charged unfair commissions to its clients in 353 different transactions involving foreign currency options. The commissions charged by Appellants were so excessive that it was virtually impossible for their clients to break even, much less profit, from their options trading. The commissions ranged from $50 to $89 per options contract. In the vast majority of cases, Appellants charged commissions that amounted to forty percent or more of their customers' initial investment. In fact, only twenty-four percent of Appellants' options were ever sold at a profit.

### C. *NASD Disciplinary Proceedings*

On September 27, 1991, the NASD's District Business Conduct Committee sanctioned Appellants for violating the NASD's Rules of Fair Practice. The NASD District Committee found that Atlanta–One's commissions were excessive and unfair. Specifically, they were held to be in violation of Article III, Section 1 of the NASD Rules. Article III, Section 1 requires NASD members to "observe high standards of commercial honor and just and equitable principles of trade." McCarthy and Blodgett were fined $75,000 and $50,000 respectively in addition to $413 in costs. They were also suspended for thirty days and ordered to requalify before acting again in any capacity requiring qualification within the securities industry. Appellants appealed to the NASD's Business Conduct Committee. On March 10, 1992, the NASD Business Conduct Committee affirmed the decision

of the NASD District Committee and imposed an additional $721 in costs.

Appellants appealed to the Commission. The Commission reviewed the matter de novo. On March 8, 1995, the Commission affirmed the NASD decision and "sustain[ed] the NASD's findings that [Appellants] charged excessive commissions in violation of Article III, Section 1 of the Rules of Practice." *In re Atlanta–One, Inc.,* Exchange Act Release No. 34–35455, 58 S.E.C. Docket 2483, 1995 WL 103844 (Mar. 8, 1995), *available at* 337 Md. 641, 655 A.2d 400, 1995 WL 103975, at *4.

Appellants subsequently petitioned us for review of the Commission's decision. In a published opinion filed November 12, 1996, we denied the petition and affirmed the Commission's order, noting that Appellants charged their clients "excessive commissions that blatantly exceeded a fair and equitable level." *Atlanta–One, Inc. v. SEC,* 100 F.3d 105, 110 (9th Cir.1996).

On November 7, 2001, the Commission filed an "Application" in district court, requesting Appellants be ordered to comply with the Commission's order of March 8, 1995, and pay sanctions. That same day, the Commission served Appellants with the Application and all supporting documents filed in district court. No summons, however, was ever issued by the district court. Two weeks later on November 21, 2001, the district court summarily granted the Commission's Application without first convening a hearing or, alternatively, permitting Appellants to respond. Appellants appealed.

On June 21, 2002, the Commission moved to remand this action to district court. The Commission argued that Appellants should be given an opportunity to (1) respond to the Commission's Application and (2) raise affirmative defenses before the district court. The Commission explained that, "Remand is ... appropri-

ate because [Appellants'] purported defenses raise substantive arguments whose resolution requires the development of facts not currently in the record." On August 30, 2002, this Court denied the motion without prejudice.

### STANDARD OF REVIEW

 The district court's interpretation of a statute is reviewed de novo. *See In re Cardelucci,* 285 F.3d 1231, 1233 (9th Cir.2002). Whether the procedures used by the district court violated the Due Process Clause is reviewed de novo. *See Dittman v. California,* 191 F.3d 1020, 1024–25 (9th Cir.1999).

### DISCUSSION

I. *The Commission's authority to enforce its order via an application to the district court.*

 Upon application by the Commission, § 21(e)(1) of the Exchange Act authorizes a district court to issue writs of mandamus, injunctions, and orders commanding any person to comply with the Exchange Act and orders issued thereunder. 15 U.S.C. § 78u(e). Specifically, § 21(e) states in pertinent part that:

> Upon application of the Commission the district courts of the United States ... shall have jurisdiction to issue writs of mandamus, injunctions, and orders commanding (1) any person to comply with the provisions of this chapter [or with] ... the rules of a national securities exchange or registered securities association of which such person is a member or person associated with a member ....

15 U.S.C. § 78u(e).

In its Order of March 8, 1995 (the "Order"), the Commission affirmed the NASD's sanctions. The SEC's subsequent Application before the district court sought enforcement of the Order pursuant to

§ 21(e). We agree with the Fifth Circuit that "the Exchange Act, as we read the statute, explicitly provides for district court jurisdiction over actions brought to enforce SEC-ordered sanctions." *Lang v. French*, 154 F.3d 217, 222 (5th Cir.1998).

Appellants contend, however, that the Commission possesses no standing to seek enforcement of the NASD's decision. According to Appellants, the Commission's Application was not seeking enforcement of a Commission order but the enforcement of a NASD order. This interpretation mischaracterizes the facts in this case.

■ Section 21(e) of the Exchange Act expressly permits the Commission to seek enforcement of its orders by making application to the district court. 15 U.S.C. § 78u(e). "The fact that the SEC's order derives from the agency's adjudicatory role in the NASD's self-regulating disciplinary process ... has no bearing on the jurisdictional grant embodied in section 21(e)(1)." *Lang*, 154 F.3d at 222. The Exchange Act does not limit or restrict what types of Commission orders may be enforced through § 21(e) other than to state that the Commission's order must have been issued pursuant to the Exchange Act or the rules and regulations promulgated thereunder. 15 U.S.C. § 78u(e).

Here, the Order was duly issued by the Commission pursuant to its authority under the Exchange Act. It affirmed a decision of the NASD and was published and issued by the Commission pursuant to the supervisory and adjudicative role it is assigned within the NASD's self-regulating disciplinary process. The Commission does not lose standing to enforce its orders in district court simply because it fulfills an appellate function, rather than one of direct enforcement or regulation, in making such an order.

Accordingly, we conclude that the Commission possesses standing to enforce its Order in district court pursuant to § 21(e) of the Exchange Act.

II. *Section 21(e) of the Exchange Act permits the use of summary proceedings in district court to enforce Commission orders.*

■ Although Rule 1 of the Federal Rules of Civil Procedure states that "[the Federal Rules of Civil Procedure] govern the procedure in United States district courts in *all suits* of a civil nature," Fed. R.Civ.P. 1 (emphasis added), the Supreme Court recognizes an exception to this general rule. *See New Hampshire Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 406–07, 80 S.Ct. 843, 4 L.Ed.2d 826 (1960). The Court acknowledged that summary proceedings may be permissible in circumstances expressly authorized by statute. *Id.* at 407–08, 80 S.Ct. 843. Although the "normal course" for commencing and adjudicating controversies before the district courts is governed by the Federal Rules of Civil Procedure, the Court explained that "[t]he very purpose of summary ... trials is to escape some or most of these trial procedures." *Id.* at 406, 80 S.Ct. 843. Summary proceedings may be "conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes even *ex parte*." *Id.*

■ The plain meaning of a statute is always controlling "unless that meaning would lead to absurd results." *Reno v. Nat'l Transp. Safety Bd.*, 45 F.3d 1375, 1379 (9th Cir.1995). When the statute is ambiguous or the statutory language does not resolve an interpretive issue, "our approach to statutory interpretation is to look to legislative history." *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir.1996).

Upon "application" by the Commission, § 21(e) of the Exchange Act expressly grants district courts the jurisdiction to issue writs of mandamus, injunctions, and orders to command enforcement of, *inter alia,* Commission orders. 15 U.S.C. § 78u(e).

■ Appellants contend that § 21(e) does not expressly authorize the use of summary proceedings and, therefore, the Federal Rules still apply. Appellants equate an "application" with an "action" and argue that the two words are not materially distinct. Lastly, Appellants claim that § 21(e) requires the Commission to file a formal civil action under the Federal Rules to enforce its orders. We disagree.

■ Appellants' interpretation of § 21(e) is not reasonable, nor does it comport with our principles of statutory construction. It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words. *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983); *Persinger v. Islamic Republic of Iran,* 729 F.2d 835, 843 (D.C.Cir.1984); *Nat'l Insulation Transp. Comm. v. ICC,* 683 F.2d 533, 537 (D.C.Cir.1982); *see Russell v. Law Enforcement Assistance Admin.,* 637 F.2d 354, 356 (5th Cir.1981) (stating the "well settled rule of statutory construction that where different language is used in the same connection in different parts of a statute it is presumed that the Legislature intended a different meaning and effect") (internal quotation marks omitted). Congress's explicit decision to use one word over another in drafting a statute is material. *See Cent. States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 941 (7th Cir.2000) ("Different

words in a statute ... should be given different meanings unless the context indicates otherwise."); *Miss. Poultry Ass.'n. v. Madigan,* 992 F.2d 1359, 1363–64 (5th Cir. 1993). It is a decision that is imbued with legal significance and should not be presumed to be random or devoid of meaning. *See NLRB v. Food Fair Stores, Inc.,* 307 F.2d 3, 10 (3rd Cir.1962) (stating the rule of statutory construction which holds that different words appearing in the same statute are presumed to have different meanings). Even words with remarkably similar definitions can still convey a unique or distinct meaning or flavor from words that are similar or even synonymous in nature because of their differing tone or usage within a sentence.

In interpreting a statute, we are faced with the task of identifying the scope or substance of a rule through the prism of textual language. *See generally* H.L.A. Hart, The Concept of Law 13 (2d ed.1994) ("[D]efinition, as the word suggests, is primarily a matter of drawing lines or distinguishing between one kind of thing and another, which language marks off by a separate word."). Here, the principal question before us is whether § 21(e)'s use of the word "application" prescribes the use of summary rather than plenary proceedings for the enforcement of Commission orders.

"Applications" are distinct from "actions." The two words are not interchangeable. Congress's use of the word "application," rather than "action," in § 21(e) is significant. An "action" is defined as "a civil or criminal judicial proceeding," Black's Law Dictionary 28 (7th ed.1999), and more specifically as "an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right," *id.* (quoting 1 Morris M. Estee, Estee's Pleadings, Practice, and Forms

§ 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885)). *See also Cann v. Carpenters' Pension Trust Fund for N. Cal.*, 989 F.2d 313, 316 (9th Cir.1993) ("The word 'action' in its usual legal sense means 'a suit brought in a court; a formal complaint within the jurisdiction of a court of law,' and 'includes all the formal proceedings in a court of justice attendant upon the demand of a right ... in such court....' ") (quoting Black's Law Dictionary 26 (5th ed.1983)); *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 119–20 (2d Cir.2002) ("Used in a statute, the term 'action' traditionally connotes a formal adversarial proceeding under the jurisdiction of a court of law."); *TLI, Inc. v. United States*, 100 F.3d 424, 427 (5th Cir.1996); *Resolution Trust Corp. v. Love*, 36 F.3d 972, 976 (10th Cir.1994).

■ In short, an "action" is the formal and ordinary means by which parties seek legal and/or equitable relief before a court of law through the filing of a formal complaint, triggering the full array of legal, procedural, and evidentiary rules governing the process by which a court adjudicates the merits of a dispute. Absent express statutory authorization stating otherwise, there is no question that the Federal Rules govern all "actions" before the district courts of the United States. *Scanlon*, 362 U.S. at 407–08, 80 S.Ct. 843.

■ "Applications," however, are different. An "application" is merely a "motion." Black's Law Dictionary 96 (7th ed.1999). A "motion" is defined as, "[a] written or oral application requesting a court to make a specified ruling or order." *Id.* at 1031. An "application" is not a "lawsuit" or a "formal complaint." It does not necessarily include or trigger "all the formal proceedings in a court of justice" as does the filing of an "action." *See id.* at 28. Had Congress intended to require the Commission to bring a full-blown civil action under the Federal Rules in order to

enforce its orders, Congress would have made this explicit by requiring the Commission to file an "action" in district court, rather than an "application."

In both the Exchange Act and the Securities Act of 1933, Congress specifically uses the term "action," rather than "application," when it intends to require the Commission to file a formal civil action to initiate proceedings. For instance, § 20(b) of the Securities Act mandates that the Commission bring an "action" in district court to enjoin any person or persons engaging in or about to engage in a violation of the Securities Act. 15 U.S.C. § 77t(b). Also, § 21(d)(1) of the Exchange Act requires the Commission to file an "action" in district court to enjoin a person or persons engaging in or about to engage in a violation of the Exchange Act or the rules of a registered securities association. 15 U.S.C. § 78u(d)(1).

In *SEC v. Sprecher*, the Second Circuit interpreted similar language in § 22(b) of the Securities Act. 594 F.2d 317, 320 (2d Cir.1979). Section 22(b) authorizes federal district courts to issue orders enforcing Commission subpoenas "upon application by the Commission." *Id.* The court reasoned that this language "authorizes summary proceedings to enforce Commission subpoenas and thus the exception for non-application of the rules of civil procedure when 'provided by statute' is met." *Id.*

Summary proceedings are particularly appropriate where the merits of the dispute have already been litigated extensively before the NASD, the Commission, and on appeal to a circuit court, where the only remedy sought is enforcement of the previously upheld order. The NASD's claims against Appellants were first adjudicated before a NASD District Committee and subsequently reviewed by the NASD's Business Conduct Committee. Defendants were then permitted to appeal to the

Commission for de novo review. *See* 15 U.S.C. § 78s(e). Finally, Appellants appealed the Commission's ruling to this Court. *See id.* § 78y(a)(1).

Here, Appellants have received four different opportunities to litigate the merits of this case. It would be redundant and a waste of judicial resources to provide Appellants with a fifth round of litigation on the substantive issues relating to this action. Section 21(e) is an enforcement mechanism; its purpose is to ensure that NASD members comply with the Commission. There is no evidence in the statute or its legislative history from which to infer that § 21(e) was enacted to create another layer of adjudication. Rather, § 21(e) authorizes district courts to issue writs of mandamus, injunctions, and orders *commanding* NASD members, who violate Commission orders, to comply with the Commission or face federal contempt charges. The forcefulness of § 21(e)'s language is further evidence that Congress intended to authorize a more summary procedure. By the time a § 21(e) application is filed by the Commission, the time and opportunity for adjudicating the merits of the claim have been exhausted; all that is left to do is enforce the order. Appellants should not be permitted to exploit this statutory provision to delay and prolong the enforcement of a duly issued order of the Commission.

Summary proceedings are utilized in other legal contexts as well. So long as express statutory authorization exists, courts have deemed summary proceedings permissible in a number of different contexts. *Scanlon,* 362 U.S. at 407–08, 80 S.Ct. 843. For instance, the Second Circuit affirmed that the Commission could enforce investigatory subpoenas "upon application" to a district court in summary proceedings without the filing of a complaint. *Sprecher,* 594 F.2d at 320 ("Section

22(b) of the Securities Act ... permits a federal court to order enforcement ... 'upon application by the Commission.' We think this provision authorizes summary proceedings...."). The Second Circuit also affirmed that the enforcement of IRS jeopardy levies could be adjudicated through summary proceedings before a district court. *United States v. First Nat'l. City Bank,* 568 F.2d 853, 855–56 (2d Cir.1977) (finding that 26 U.S.C. § 7402(a) authorizes summary proceedings). Summary proceedings have also been used to enforce Federal Election Commission subpoenas. *FEC v. Fla. for Kennedy Comm.,* 492 F.Supp. 587, 590 (S.D.Fla.1980).

Lastly, Congress's stated objective of granting the Commission "broad and flexible authority" to shape a new market system also weighs in favor of permitting the use of summary proceedings. *See* S.Rep. No. 94–75, at 2 (1975), *reprinted in* 1975 U.S.S.C.A.N. 179, 180. The Securities Amendments of 1975 (the "Amendments"), of which § 21(e) was a part, were intended to address the securities industry's "languor," *id.* at 1, 1975 U.S.S.C.A.N. at 180, and assure investors, both domestically and overseas, that the U.S. securities market would remain "vigorous and efficient," *id.* at 2, 1975 U.S.S.C.A.N. at 181. Specifically, the Senate Committee Report (the "Report") explains that the provision was enacted to "confer upon District Courts of the United States, upon application by the [Commission], the jurisdiction to (1) command a member or participant in a[SRO] to comply with ... the Exchange Act, the rules thereunder, and the organization's own rule." *Id.* at 135, 1975 U.S.S.C.A.N. at 312. The underlying purpose of the provision was to grant district courts the jurisdiction to decide whether a writ of mandamus, injunction, or order should be issued to (1) enforce a Commission order or (2) comply with the Exchange Act and/or the rules of a national

securities association or exchange. *Id.* According to the Report, jurisdiction is triggered by the Commission's filing of an "application" in district court. *Id.*

Furthermore, with respect to the Commission, the Amendments were intended to "enhance the oversight powers of the [Commission]"; lead to an "increased willingness on the part of the [Commission] to take formal action where needed"; and make clear Congress's explicit intent to encourage the Commission to be more strident in its enforcement function. *Id.* at 34–36, 1975 U.S.S.C.A.N. at 212–13. The utilization of summary procedures advances these goals by promoting efficiency and bolstering the Commission's capacity to take much-needed formal action against individuals and corporations who violate Commission rules, regulations, and orders.

Burdening the courts and the Commission with plenary proceedings, on the other hand, could discourage the Commission from taking action. Deterring the Commission from filing such applications in district court would weaken the confidence of investors in the securities industry; undermine the Commission's ability to instill faith in the securities market; create a more inefficient mechanism for enforcing the nation's securities laws and regulations; and, thereby, counter Congress's intent to fashion a "more efficient and responsive securities industry." *Id.* at 2, 1975 U.S.S.C.A.N. at 180.

Accordingly, we hold that § 21(e) of the Exchange Act authorizes the use of summary proceedings to enforce Commission orders in district court.

### III. *Due process requires an opportunity to respond.*

■■■■ "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotation marks omitted). Due process includes notice "reasonably calculated, under all the circumstances, to apprise interested parties" of the proceeding, and an opportunity to be heard. *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Second Circuit explained that, " '[D]ue process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions.' " *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 96 (2d Cir.1997) (quoting *In re Ames Dep't Stores, Inc.,* 76 F.3d 66, 70 (2d Cir.1996)). The denial of this opportunity renders a court's ensuing judgment void. *See Klapprott v. United States,* 335 U.S. 601, 609, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (stating that "if the hearing of evidence is a legal prerequisite to rendition of a valid ... judgment," the denial of the opportunity to be heard renders the judgment void).

■■■ In the present case, the district court did not set a hearing date prior to ruling on the Commission's Application, nor were Appellants afforded an opportunity to respond. Fairness and due process require that Appellants be given an opportunity to be heard before the district court issues a judgment impacting their rights and property. Here, the district court ruled on the Commission's Application two weeks after the Application was filed. Prior to ruling, the district court should have employed a procedure consistent with local and federal rules to ensure that Appellants had the opportunity to be heard. It could have, for example, set a briefing schedule in order to provide Appellants with an opportunity to respond or issued an order to show cause as to why the Application should not be granted, or set a hearing on the matter. Instead, the district court signed the Commission's proposed order without any evidence in the record of the

Appellants having had a chance to be heard in district court prior to the ruling.

Furthermore, Appellants' contention that the Commission did not comply with the Local Rules of the U.S. District Court for the Central District of California in filing its Application is correct. The Commission did not designate a hearing date for its Application as required under Local Rule 6–1. *See* C.D. Cal. R. 6–1. Local Rule 6–1 also requires that the non-moving party be given at least twenty-one days notice prior to the hearing. *See id.* No such notice was provided. Furthermore, all *ex parte* applications in the Central District must be accompanied by a memorandum containing the name, address and telephone number of opposing counsel as well as the reasons supporting an *ex parte* application. *See* C.D. Cal. R. 7–19. The Commission's memorandum does not satisfy these requirements.

Lastly, the Commission conceded in its Motion for Full Remand before this Court that this action should be remanded to the district court for "consideration of [Appellants'] arguments in the first instance." Although the Commission does not explain in great detail why remand is appropriate, it can be inferred that the Commission does not oppose Appellants' claim that the district court should have afforded Appellants an opportunity to respond to the Application before ruling on its merits.

Thus, in the interests of basic fairness and due process, this action is remanded to the district court so that Appellants may have an opportunity to respond to the Commission's Application. We also decline to address the issue of whether Appellants' affirmative defenses are potentially valid and remand this issue to the district court for further proceedings to assess the merits of Appellants' defenses.

*CONCLUSION*

For the foregoing reasons, the district court's order is VACATED, and this action is REMANDED to the district court so that Appellants may have an opportunity to respond to the Commission and raise affirmative defenses to the Commission's Application for enforcement of its Order.