

Villanova University School of Law
Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2006

# SEC v. JW Barclay Co

Precedential or Non-Precedential: Precedential

Docket No. 04-3536

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"SEC v. JW Barclay Co" (2006). *2006 Decisions.* Paper 1193.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1193

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT
_____

Case No: 04-3536

SECURITIES AND EXCHANGE COMMISSION


v.

J.W. BARCLAY & CO., INC.;
JOHN A. BRUNO


John A. Bruno,

Appellant

_____

On Appeal from the United States
District Court
for the District of New Jersey
(Civ No. 02-3164)
District Judge: William H. Walls

_____

Argued December 14, 2005

Before: SMITH, BECKER, and GREENBERG, *Circuit Judges*

(Filed: April 5, 2006  )

_____

John A. Bruno
P.O. Box 3175
Sea Bright, NJ  07760
        *Appellant, pro se*

Edward M. Posner (Argued)
Drinker, Biddle & Reath
18th & Cherry Streets
One Logan Square
Philadelphia, PA  19103
        *Amicus curiae*

Mark R. Pennington (Argued)
Angel Yang
Securities and Exchange
Commission
100 F Street, N.E.
Washington, DC 20549
        *Counsel for appellee*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

This appeal arises out of a defunct broker-dealer's unpaid penalty for a securities law violation.  The Securities and Exchange Commission ("SEC") filed an application with the District Court seeking an order directing the broker-dealer to pay the penalty.  In addition, the SEC also sought a judgment that the former president of

the company was jointly and severally liable for this unpaid penalty and an order directing him to pay the penalty. Following discovery, the District Court granted the SEC's unopposed motion for summary judgment and ordered the former president to pay the penalty. Because we hold (1) that the Securities Exchange Act of 1934 ("Exchange Act") provides for a control person's joint and several liability to the SEC for a debt in the amount of an unpaid SEC penalty when that control person induced and was a culpable participant in the controlled person's failure to pay the penalty and (2) that the District Court had jurisdiction in this case to grant an order directing such a control person to fulfill this obligation, we will affirm the judgment of the District Court.

## I.

J.W. Barclay & Co., Inc. ("Barclay") was a securities broker-dealer. Appellant John Bruno ("Bruno") was one of the founders of Barclay. Bruno owned 68 percent of Barclay, and he acted as Barclay's President from July of 1991 through at least February of 2003.

On October 20, 1998, the SEC instituted administrative proceedings against Barclay, alleging violations of § 17(a) of the Exchange Act[1] and Rule 17-a-5[2] due to Barclay's failure to timely file

_____

[1] Section 17(a) provides in relevant part:
    a) Rules and regulations
    (1) Every national securities exchange, member
    thereof, broker or dealer who transacts a business
    in securities through the medium of any such

a Form BD-Y2K. Form BD-Y2K required a broker-dealer to supply information about the broker-dealer's Year 2000 preparedness.[3]

In February of 1999, an Administrative Law Judge ("ALJ") held a hearing on this matter. On August 2, 1999, the ALJ found that Barclay had willfully violated § 17(a) and Rule 17a-5 and ordered Barclay to pay a $50,000 civil penalty. Barclay appealed the ALJ's decision and the SEC heard oral argument on July 18, 2001. On October 15, 2001, the SEC affirmed the ALJ's finding that Barclay had willfully violated § 17(a) and Rule 17a-5, but it reduced Barclay's civil penalty to $25,000 and directed Barclay to make payment on the

<div style="margin-left:2em">

member, registered securities association, registered broker or dealer, registered municipal securities dealer, registered securities information processor, registered transfer agent, and registered clearing agency and the Municipal Securities Rulemaking Board shall make and keep for prescribed periods such records, furnish such copies thereof, and make and disseminate such reports as the Commission, by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter. . . .

</div>

15 U.S.C. § 78q(a).

[2]Rule 17-a-5 provides for the nature and form of reports required by the SEC from broker-dealers. *See* 17 C.F.R. § 240.17a-5.

[3]*See* 17 C.F.R. § 240.17a-5(e)(5).

penalty within thirty days ("Order").

The SEC sent copies of the Order to Barclay's attorney of record, and Barclay's outside counsel notified Bruno that Barclay owed payment of the $25,000 penalty to the SEC. Barclay did not appeal the Order, but the company also did not pay the penalty within thirty days, or at any time thereafter.

In the meantime, Barclay had ceased operation as a broker-dealer on December 27, 2000, because it was in violation of the SEC's net capital requirements. At the end of 2000, Barclay's liabilities were greater than its assets.[4] During 2001, while the ALJ's decision was on appeal to the SEC, Bruno caused Barclay to concentrate its remaining assets, a total of more than $145,000, into Barclay's bank account. Bruno then caused Barclay to issue a check to himself in the amount of $90,000 and a check to another employee for $43,700. Bruno then continued to cause Barclay to place its deposits into this account and to issue checks from this account, primarily to pay legal fees. Even after the SEC issued the Order directing Barclay to pay the $25,000 penalty within thirty days, Bruno did not cause Barclay to use any of its funds to pay any part of the $25,000 penalty.

On July 1, 2002, the SEC filed an application with the District Court pursuant to § 21(e) of the Exchange Act, 15 U.S.C. § 78u(e)

---

[4]Barclay was not, however, formally dissolved or placed into bankruptcy.

("Application").[5] In Count I of the Application, the SEC alleged that Barclay had not paid its civil penalty as ordered by the SEC and requested an order commanding Barclay to pay the penalty. In Count II of the Application, the SEC alleged that Bruno had "knowingly failed to cause Barclay to comply with the Commission's Order," argued that Bruno was jointly and severally liable for Barclay's

---

[5]Section 21(e) provides:

> Upon application of the Commission the district courts of the United States and the United States courts of any territory or other place subject to the jurisdiction of the United States shall have jurisdiction to issue writs of mandamus, injunctions, and orders commanding (1) any person to comply with the provisions of this chapter, the rules, regulations, and orders thereunder, the rules of a national securities exchange or registered securities association of which such person is a member or person associated with a member, the rules of a registered clearing agency in which such person is a participant, the rules of the Public Company Accounting Oversight Board, of which such person is a registered public accounting firm or a person associated with such a firm, the rules of the Municipal Securities Rulemaking Board, or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title . . . .

15 U.S.C. § 78u(e).

unpaid penalty "by virtue of his status as a control person under Section 20(a) of the Exchange Act,"[6] and requested an order commanding Bruno to pay the penalty.

Barclay did not make an appearance before the District Court and final judgment by default was entered against Barclay. On September 9, 2002, Bruno filed a *pro se* answer and motion to dismiss, arguing that there was "no basis for bringing this action" against him because the Order was not issued against him, he was not named in the Order, and he was not a party in the proceeding before the SEC in which the Order was issued. The SEC moved to strike Bruno's answer and Bruno filed a response to this motion, which the District Court treated as an amended answer and motion to dismiss under Rule 12(b)(6).

In his Second Defense within his response to the SEC's motion to strike, Bruno argued that he was "not liable for a debt incurred by Barclay" and that to obtain an order against him the SEC "would have to bring a separate action or proceeding against him." In his Fourth Defense, Bruno argued that the SEC could not assert control person liability against him under § 20(a) "and hold him

_____

[6]Section 20(a) provides:
> (a) Joint and several liability; good faith defenseEvery person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

7

responsible for the civil penalty against Barclay" because Bruno was not a party to the proceedings before the SEC and no order was issued against him.

The District Court then denied the SEC's motion to strike. The District Court also held that the Application stated a claim against Bruno under § 20(a) and denied his motion to dismiss.

After the completion of discovery, the SEC filed a motion for summary judgment which included a statement of undisputed facts. Bruno did not oppose this motion for summary judgment and it was decided without oral argument.

On July 28, 2004, the District Court granted the SEC's motion for summary judgment. The District Court held that "[t]he facts set forth by the SEC in this unopposed motion for summary judgment establish each of the elements required for the SEC to prevail on its Section 20(a) action against Bruno." Specifically, the District Court declared that the undisputed facts established that: (1) Barclay was subject to an SEC order requiring it to pay a $25,000 civil penalty; (2) Barclay had failed to pay this penalty; (3) Bruno had the authority and power to direct the payment of this penalty; and (4) Bruno caused Barclay to pay himself and another employee funds from Barclay's bank accounts in 2001, which in turn caused Barclay's failure to comply with the Order because it was left with insufficient funds. Applying § 20(a) to these undisputed facts, the District Court held that "Bruno both induced and culpably participated in Barclay's failure to pay the civil penalty. Accordingly, Bruno, as a control person, is jointly and severally liable for Barclay's failure to pay the civil penalty ordered by the SEC."

Bruno's *pro se* appeal of the District Court's order granting the SEC's motion for summary judgment followed. On June 30, 2005, we appointed Edward M. Posner of the law firm Drinker,

Biddle & Reath as *amicus curiae*.[7]  We asked the *amicus* to address the question of "whether the SEC has standing to bring a claim against a control person under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t, in an enforcement action filed pursuant to Section 21(e) of the Exchange Act, 15 U.S.C. § 78u(e)," citing the circuit split on this issue in *SEC v. Coffey*, 493 F.2d 1304 (6th Cir. 1974), and *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996).  The *amicus* identified a third case addressing this issue, *SEC v. Stringer*, No. Civ. 02-1341-ST, 2003 WL 23538011 (D. Or. Sept. 3, 2003).

II.

A.

The District Court claimed original jurisdiction over the SEC's count against Bruno pursuant to 15 U.S.C. § 78u(e).  We have jurisdiction over the final judgment of the District Court pursuant to 28 U.S.C. § 1291.  We review the District Court's grant of summary judgment *de novo*.  *See, e.g., A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 578 (3d Cir. 2004).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  Once the moving party meets this initial burden, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e).  "If the adverse party does not so respond, summary judgment,

---

[7]We thank Mr. Posner for composing an illuminating brief and appearing before us to argue this matter.  We further commend Mr. Posner for the excellent manner in which he conducted these services for the Court.

if appropriate, shall be entered against the adverse party." *Id.*

B.

The Supreme Court has explained that the federal securities laws should be "construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.'" *E.g.*, *SEC v. Zanford*, 535 U.S. 813, 819 (2002) (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972) (quoting *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963))). Nonetheless, "[t]he broad remedial goals of the [securities laws] are insufficient justification for interpreting a specific provision 'more broadly than its language and the statutory scheme reasonably permit.'" *Pinter v. Dahl*, 486 U.S. 622, 653 (1988) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (quoting *SEC v. Sloan*, 436 U.S. 103, 116 (1978))); *see also Aaron v. SEC*, 446 U.S. 680, 695 (1980); *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 690 n.11 (3d Cir. 1991).

Accordingly, citing the remedial purposes of the Exchange Act, the Supreme Court has found implied private causes of action arising under § 14(a) of the 1934 Act, *see J.I. Case Co. v. Borak*, 377 U.S. 426, 429-34 (1964), and § 10(b) of the 1934 Act, *see Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 13 n.9 (1971). The Court in *Touche Ross*, however, declined to find a general implied private right of action for violations of the Act arising out of § 27 of the 1934 Act, which grants to the federal district courts exclusive jurisdiction over violations of the Act and suits to enforce any liability or duty created by the Act or rules thereunder. *See* 442 U.S. at 576-78. The Court reasoned that "[t]he source of plaintiffs' rights must be found, if at all, in the substantive provisions of the 1934 Act which they seek to enforce, not in the jurisdictional provision." *Id.* at 577.

The Court also has held that "the scope of liability created by

a particular section of the [securities laws] must rest primarily on the language of that section." *Pinter*, 486 U.S. at 653; *see also Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173-78 (1994) (holding that a private plaintiff could not bring an aiding and abetting suit under § 10(b) because the text of § 10(b) did not reach aiding and abetting); *Ballay*, 925 F.2d at 687-89 (holding that the text of § 12(2) of the 1933 Act did not create a cause of action for an oral misrepresentation in the secondary market). Similarly, the Court has looked primarily to the specific language of the relevant provisions when deriving the scienter requirements for actions arising under those provisions. *See Aaron*, 446 U.S. at 689-97 (construing § 17(a)(1), § 17(a)(2), and § 17(a)(3) of the 1933 Act and § 10(b) of the 1934 Act); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197-201 (1976) (construing § 10(b)). Nonetheless, the Court has also cited the remedial purposes of the securities laws when defining specific terms. *See generally Landreth Timber Co. v. Landreth*, 471 U.S. 681 (1985) (construing the term "security" under the 1933 and 1934 Acts); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 444-49 (1976) (construing the term "material fact" under Rule 14a-9).

Finally, citing the remedial purposes of the securities laws, the Court has held that the existence of an express private action under one provision of the securities laws does not preclude the existence of an overlapping implied private cause of action under another provision where the two provisions address "different types of wrongdoing." *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-87 (1983) (holding that an express remedy under § 11 of the 1933 Act for misleading registration statements did not preclude an overlapping implied private cause of action for fraudulent misrepresentation under § 10(b) of the 1934 Act). The Court in *Huddleston* reasoned that this "cumulative construction of the securities laws . . . furthers their broad remedial purposes." *Id.* at 386. The Court also noted that if defrauded purchasers of securities could rely only on § 11, they would have no recourse against certain individuals who could not be reached under § 11, "even if the

11

excluded parties engaged in fraudulent conduct while participating in the registration statement." *Id*. at 386 n.22. Accordingly, the Court observed that without a cumulative construction of § 10(b), "[t]he exempted individuals would be immune from federal liability for fraudulent conduct even though Section 10(b) extends to 'any person' who engages in fraud in connection with a purchase or sale of securities." *See id*.

III.

The plain language of § 20(a) supports our holding that the SEC had a claim for payment from Bruno under § 20(a) because Bruno was jointly and severally liable to the SEC for a debt in the amount of Barclay's unpaid penalty. In order for Bruno to be jointly and severally liable to the SEC under § 20(a): (1) the SEC has to be a person; (2) to whom the controlled person, Barclay, was liable; (3) as a result of some act or acts constituting a violation or cause of action under any provision of the Exchange Act or any rule or regulation thereunder. *See* 15 U.S.C. § 78t(a).[8]

---

[8]In addition, Bruno must have controlled Barclay within the meaning of § 20(a). *See* 15 U.S.C. § 78t(a). Further, Bruno must have directly or indirectly induced the act or acts constituting the violation or cause of action giving rise to the controlled person's liability. *See id*. Finally, Bruno must have been a "culpable participant" in the "act or acts constituting the violation or cause of action." *See Rochez Bros. v. Rhoades*, 527 F.2d 880, 889-90 (3d Cir. 1975). These issues are not before us on this appeal, but we note that the undisputed facts set forth by the SEC in its unopposed motion for summary judgment established that Bruno had the authority and ability to direct Barclay to pay the penalty. Accordingly, the District Court correctly held that Bruno controlled Barclay within the meaning of § 20(a). Similarly, the undisputed facts established that Bruno's transfer of Barclay's assets to himself and another

12

A.

We join the Second Circuit and hold that the SEC is a "person" within the meaning of § 20(a). *See First Jersey*, 101 F.3d at 1472. We therefore decline to join the Sixth Circuit's contrary holding that the SEC is not a "person" under § 20(a). *See Coffey*, 493 F.2d at 1318.

The Sixth Circuit in *Coffey* reasoned that because § 20(b) of the Exchange Act[9] "sets forth the standard of lawfulness to which a controlling person must conform, on penalty of liability in injunction to the SEC or criminal prosecution," § 20(a) was meant only "to specify the liability of controlling persons to private persons suing to vindicate their interests." *Id.* Accordingly, the Sixth Circuit held that the SEC was "not a person under section 20(a)" and that the SEC could not rely on § 20(a) when seeking personal injunctions against corporate officials for a corporation's alleged violations of the securities laws. *Id.*

_____

employee caused Barclay's inability and subsequent failure to pay the penalty, and therefore the District Court correctly held that Bruno both induced and was a culpable participant in Barclay's failure to pay the penalty.

[9]Section 20(b) provides:
> (b) Unlawful activity through or by means of any other person
> It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.

15 U.S.C. § 78t(b).

Regardless of the merits of this reasoning in 1974, the Sixth Circuit's conclusion that the SEC is not a person under § 20(a) was severely undermined in 1975, when an amendment to the Exchange Act modified the Exchange Act's definition of "person." *See* 15 U.S.C. § 78c(a)(9) (1975 Amendments). As of 1974, the Exchange Act had defined a "person" as "an individual, a corporation, a partnership, an association, a joint stock company, a business trust, or an unincorporated organization." The 1975 amendment, however, explicitly expanded the scope of the Exchange Act's definition of a "person" so as to include governments and government agencies, changing it to "a natural person, company, government, or political subdivision, agency, or instrumentality of a government." *Id.*

Accordingly, while the Sixth Circuit's limitation of § 20(a) claims to "private persons" may have been supported by the Exchange Act's statutory definition of "person" as of 1974, the Exchange Act's current statutory definition of "person" explicitly includes government agencies such as the SEC.[10] Consequently, we

_____

[10]Subsequent legislative history confirms our construction of §20(a) in light of the Exchange Act's statutory definition of "person." In the Insider Trading Sanction Act of 1984, 98 Stat. 1264, Congress authorized the SEC to collect civil penalties for insider-trading violations, but also specifically exempted this new provision from the operation of § 20(a). *See id.* ("Section 20(a) of this title . . . shall not apply to an action brought under this paragraph."). The House Report stated that this legislation nonetheless "would not change existing law with respect to other Commission remedies that may be used against these classes of law violators. . . . Under current law, the Commission could impose liability on a controlling person under Section 20(a) of the Exchange Act. . . . The bill does not alter this situation in any way." 1983 House Report, H.R. Rep. No. 98-355, 98 Cong. 1st Sess. 10 (Sept. 15, 1983), *reprinted in* 1984 U.S.C.C.A.N. 2274. Accordingly, although this legislative

agree with the Second Circuit that the plain language of 15 U.S.C. 78c(a)(9), as amended in 1975, requires our holding that the SEC is a "person" who may bring a claim under § 20(a). *See First Jersey*, 101 F.3d at 1472.[11]

## B.

We further hold that in the circumstances of this case, Barclay was liable to the SEC for a debt in the amount of the unpaid penalty within the meaning of § 20(a). We begin with the observation that § 20(a) explicitly provides for a control person's joint and several liability. "A liability is joint and several when 'the creditor may sue one or more of the parties to such liability separately, or all of them together, at his [or her] option.'" *United States v. Gregg*, 226 F.3d 253, 260 (3d Cir. 2000) (citation omitted). Accordingly, "an assertion of joint and several liability is an assertion that *each* defendant is liable for the entire amount, although the plaintiff only recovers the entire amount once." *Golden v. Golden*, 382 F.3d 348, 355 n.5 (3d Cir. 2005) (emphasis in original). Joint and several liability can arise in many different contexts. *See*, *e.g.*, *id.* (various torts); *Gregg*, 226 F.3d at 260 (statutory damages for violations of the Freedom of

---

history does not describe in detail how the SEC could make use of § 20(a), the 1984 Congress apparently construed § 20(a) as potentially providing standing to the SEC in civil penalty cases such that Congress deemed it necessary to specifically exempt this new penalty provision from the operation of § 20(a).

[11]The Exchange Act provides that its statutory definitions are to be used "unless the context otherwise requires." *See* 15 U.S.C. § 78c(a). As discussed in Part III.D, *infra*, our construction of § 20(a) serves the remedial purposes of the Exchange Act, and so we hold that the context supplied by § 20(a) does not require us to use a more limited definition of "person."

Access to Clinic Entrances Act); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993) (co-obligors under a contract).

In this case, the relevant liability of the controlled person for the purpose of defining the control person's joint and several liability under § 20(a) is the controlled person's obligation to pay some amount to a creditor when that claim for payment arises under the securities laws.[12] Given the uncontested facts of this case, we hold that Barclay was liable to the SEC within the meaning of § 20(a) for a debt in the amount of the unpaid penalty. On this issue, we take note of the definitions of "debt" and "debtor" in the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq*. That Act defines a "debt" to the United States in part as "an amount that is owing to the United States on account of a . . . penalty . . . ." 28 U.S.C. § 3002(3)(B). A "debtor" in turn is a "person who is liable for a debt or against whom there is a claim for a debt." 28 U.S.C. § 3002(4).

Although these definitions do not appear in the Exchange Act, we find them instructive on the general relationship between unpaid penalties and the liability of persons to the United States and its agencies. In accordance with these definitions, we hold that when Barclay failed to pay its penalty within thirty days after the SEC issued its Order and the administrative proceedings concluded, Barclay became a debtor to the SEC.[13] Barclay thus was liable for a

---

[12]For the purposes of § 20(a), the financial obligation of the controlled person to the creditor must arise under the Exchange Act or any rule or regulation thereunder. *See* 15 U.S.C. § 78t(a).

[13]The SEC conceded in its briefs that: (1) Barclay was not liable to the SEC for the unpaid penalty until Barclay failed to pay the penalty order; (2) Barclay's failure to pay the penalty order did not occur until thirty days after the administrative proceedings concluded; and (3) Bruno's joint and several

debt to the SEC in the amount of this unpaid penalty as of that date.[14]

---

liability under § 20(a) for the amount of the unpaid penalty did not arise until that date. Consequently, we also hold that Bruno's joint and several liability for this debt under § 20(a) did not arise until that time.

[14]Because of the limited nature of the SEC's claim in this case, we need not reach the issue of whether the SEC could have used § 20(a) to impose joint and several liability on Bruno insofar as he may have induced and been a culpable participant in Barclay's violations of § 17(a) and Rule 17-a-5, rather than insofar as he induced and was a culpable participant in Barclay's failure to pay the penalty. Nonetheless, we note that such a claim would have sought to impose derivative legal liability on Bruno for Barclay's violations of the Exchange Act, and we agree with the Sixth Circuit in *Coffey* that § 20(b), not § 20(a), defines the general "standard of lawfulness to which a controlling person must conform." *See* 493 F.2d at 1318. We also agree with the United States District Court for the District of Oregon, which reasoned that while a control person could be held liable in an SEC enforcement action under § 20(b) for certain violations committed by a controlled person, in such a case the SEC itself would not be an "injured party," and the defendants in such an enforcement action would not be "liable to the SEC the way that [they] would be liable to a private plaintiff." *Stringer*, WL 23538011 at *6. In our case, however, the SEC is not claiming that Barclay is liable to the SEC for its violations of § 17(a) and Rule 17-a-5, but rather that Barclay is liable to the SEC for a debt in the amount of its unpaid penalty. Barclay in that sense is liable to the SEC for this debt just as any debtor would be liable to a private creditor because of the debtor's unpaid financial obligation to the claimant. Similarly, Bruno is individually liable to the SEC for this debt just as any jointly and severally liable party would be individually liable to

C.

Finally, we hold that Barclay's failure to pay the penalty was an act constituting a cause of action under a provision of the Exchange Act, specifically § 21(e).[15] We have noted that a "cause of action" has been defined as "the fact or facts which give a person a right to judicial relief . . . [or] to institute judicial proceedings." *In re Remington Rand Corp.*, 836 F.2d 825, 830 n.5 (3d Cir. 1988) (quoting Black's Law Dictionary 201 (5th ed. 1979)).   In this case, the relevant facts arose when Barclay failed to pay its penalty within thirty days as provided by the Order.  At that point, the SEC had a cause of action against Barclay arising under a provision of the Exchange Act because § 21(e) provides in part that the district courts

a private creditor because of the debtor's unpaid financial obligation to that creditor.

[15]We note again that the relevant act was not Barclay's original violation of § 17(a) and Rule 17-a-5, and that the SEC has not sought to impose control person liability on Bruno for that act.  Rather, the only relevant act was Barclay's failure to comply with the Order by failing to pay its penalty within thirty days.  The control person, however, need not have induced a violation of the Exchange Act in order to have joint and several liability under § 20(a).  The plain language of § 20(a) provides that the control person must have induced "the act or acts constituting the violation *or cause of action*." *See* 15 U.S.C. § 78t(a) (emphasis added).  The disjunctive "or" in this clause implies that joint and several liability for control persons can arise under § 20(a) where the control person has induced acts which constitute a cause of action arising under the Exchange Act, even if the control person did not induce acts which constitute a violation under the Exchange Act.

18

of the United States, upon application by the SEC, shall have jurisdiction to issue orders commanding any person to comply with the SEC's orders. *See* 15 U.S.C § 78u(e). Accordingly, the SEC was entitled to obtain judicial relief against Barclay in the District Court when Barclay violated the Order by failing to pay its penalty within thirty days. Barclay's failure to pay the penalty thus was an act giving rise to a cause of action under the Exchange Act.[16]

---

[16]The *amicus*, relying on a Ninth Circuit case, *SEC v. McCarthy*, 322 F.3d 650 (9th Cir. 2003), argues that an SEC application pursuant to § 21(e) does not commence an "action," and therefore that Barclay's failure to pay the penalty did not constitute a "cause of action." Relying on the definition of "application" in *Black's Law Dictionary*, the Ninth Circuit in *McCarthy* distinguished "applications" from "actions" for the purpose of determining whether SEC applications brought under § 21(e) require a formal complaint and full formal proceedings pursuant to the Federal Rules of Civil Procedure. *See id.* at 656-57. Regardless of the merits of that distinction in the context of that case, we do not find that distinction applicable to the issue of whether the failure to comply with an SEC order constitutes a "cause of action" under § 21(e). In fact, *Black's Law Dictionary* defines an "action" as any "civil or criminal judicial proceeding," and this broad definition is supported by the following reasoning:

> An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. But in some sense this definition is equally applicable to special proceedings. More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree.

19

D.

In sum, the plain language of § 20(a) requires our holding that the SEC had a claim for payment from Bruno under § 20(a) because Bruno was jointly and severally liable to the SEC for a debt in the amount of Barclay's unpaid penalty. The SEC was a person to whom Barclay was liable as the result of an act constituting a cause of action under the Exchange Act. Bruno, who controlled Barclay, induced and was a culpable participant in the act constituting this cause of action, and therefore he was jointly and severally liable for this debt in the amount of the unpaid penalty.

We further note that our construction of § 20(a) serves the remedial purposes of the Exchange Act.[17] With a more narrow

---

The action is said to terminate at judgment. Black's Law Dictionary 31 (8th ed. 2004) (quoting 1 Morris M. Estee, Estee's Pleadings, Practice, and Forms § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885)). The "special proceedings" in a district court following an SEC application brought under § 21(e) fit this general definition of an "action"–even if they are not conducted as full civil actions governed by the Federal Rules of Civil Procedure–because they are judicial proceedings which terminate in a judgment or decree. Consequently, the Ninth Circuit's holding in *McCarthy* that applications under § 21(e) are not full civil actions within the meaning of the Federal Rules of Civil Procedure is not inconsistent with our holding that a party's failure to comply with an SEC order is a "cause of action" under § 21(e).

[17]Because the plain language of § 20(a)–including the Exchange Act's statutory definition of "person"–supports our construction of § 20(a), this is not a case in which we are using the general remedial purposes of the securities laws to justify a departure from the language of § 20(a). *Cf. Pinter*, 486 U.S. at

20

construction of § 20(a), the deterrent effects of civil penalties arising under the Exchange Act would be diluted in cases such as this one where a closely-held firm is subject to a penalty, and the persons controlling the firm transfer the firm's assets to themselves, causing the firm to be unable to pay its penalty. Although § 20(b) may provide an overlapping remedy in some such cases, control persons who induce the transfers of the firm's assets to themselves may not have participated in the underlying violations. In that sense, our cumulative construction of § 20(b) and § 20(a) targets different forms of wrongdoing, and thus § 20(a), given our construction, could reach wrongdoers who might otherwise escape liability under § 20(b). Consequently, our construction of § 20(a) is also supported by the remedial purposes of the Exchange Act. *Cf. Huddleston*, 459 U.S. at 381-87.

## IV.

Our holding that the SEC had a claim for payment from Bruno under § 20(a) because of his joint and several liability for a debt in the amount of the unpaid penalty does not itself imply that the SEC could assert this claim in its Application under § 21(e). Bruno has argued that because he was not a party to the Order, he could not be ordered to pay the penalty on Barclay's behalf. The *amicus* also has reasoned

---

653. Similarly, because § 20(a) is a substantive liability provision, we are not implying that the SEC has a claim against Bruno merely on the basis of a jurisdictional provision. *Cf. Touche Ross*, 442 U.S. at 577. Finally, as we did in *Rochez Bros.*, 527 F.2d at 889-90, we are looking to the language of § 20(a) to define the scienter requirements for control persons under § 20(a). *Cf. Aaron*, 446 U.S. at 689-97. Accordingly, it is appropriate for us to consider the remedial purposes of the securities laws as we construe § 20(a).

that § 21(e) is merely an enforcement mechanism for existing SEC orders and that the District Court did not have jurisdiction to issue this judgment and order against Bruno.[18] We hold, however, that the plain language of § 21(e), interpreted in light of the broad remedial purposes of the Exchange Act, grants jurisdiction to the district courts to order control persons who are jointly and severally liable under §

[18]The *amicus* cites *SEC v. Cherif*, 933 F.2d 403, 413 (7th Cir. 1991), for the proposition that § 21(e) cannot be used to impose individual liability on a party not named in the administrative proceedings and not alleged to have violated the Exchange Act. In *Cherif*, the party accused of violating the securities laws had allegedly been using the non-party's brokerage account to make trades. *Id.* at 406-07. In a § 21(e) application, the SEC sought a preliminary injunction freezing the assets in the non-party's account, but the SEC did not claim that the account holder himself had violated the securities laws. *Id.* at 413. The Seventh Circuit held that "[n]othing in the statute or case law suggests that [§ 21(e)] authorizes a court to freeze the assets of a non-party, *one against whom no wrongdoing is alleged*." *Id.* at 413-14 (emphasis added). Accordingly, *Cherif* is distinguishable from our case because here the SEC alleged in its application that Bruno "knowingly failed to cause Barclay to comply with the Commission's order," and we hold that this was an allegation of wrongdoing for the purpose of finding Bruno jointly and severally liable for a debt in the amount of the unpaid penalty under § 21(a). Indeed, the Seventh Circuit's wrongdoing requirement for new claims brought under § 21(e), as stated in *Cherif*, will automatically be satisfied when the new claims are properly stated against a control person under § 20(a) in a § 21(e) application. That is because one element of control person liability under § 20(a) is that the control person was a "culpable participant" in the controlled person's act or acts constituting the violation or cause of action. *See Rochez Bros.*, 527 F.2d at 889-90.

22

20(a) to fulfill their individual financial obligations to the relevant claimant, even where those control persons are not subject to an existing SEC order.

We begin again with the text of the relevant provision. By its plain terms, the grant of jurisdiction to the district courts in § 21(e) is not limited to ordering persons subject to existing SEC orders to comply with those orders. Rather, the broad language of § 21(e) empowers the district courts "to issue writs of mandamus, injunctions, and orders commanding [] any person to comply with the provisions of [the Act], the rules, regulations, and orders thereunder . . . ." *See* 15 U.S.C. § 78u(e).

In this case, we hold that the District Court's order directing Bruno to pay Barclay's unpaid penalty was an order commanding Bruno to comply with his obligations under § 20(a). As discussed in Part III.B, *supra*, when a party is jointly and severally liable for a financial obligation, that party is individually responsible for paying the entire amount of the obligation to the creditor. Accordingly, insofar as Bruno was jointly and severally liable for Barclay's debt to the SEC under § 20(a), § 20(a) created a duty on Bruno's behalf to pay the entire amount of this obligation to the SEC. In that sense, the District Court simply commanded Bruno to comply with his duties as defined by § 20(a), and therefore the District Court had jurisdiction to issue this order under § 21(e).

We note again that while our construction of § 21(e) is based primarily on the plain language of the provision, it is further supported by the broad remedial purposes of the Exchange Act. In this case, as the SEC conceded, Bruno's joint and several liability under § 20(a) did not arise until Bruno induced and culpably participated in Barclay's failure to pay the penalty within thirty days as required by the Order. Accordingly, the SEC could not have ordered Bruno to comply with his duties under § 20(a) in the original

23

Order because Bruno did not yet have any such duties.[19]  In contrast, when Barclay failed to pay the penalty within thirty days, the SEC's cause of action against Barclay under § 21(e) arose.  Consequently, our construction of § 21(e) serves the remedial purposes of the Exchange Act because it allows the SEC to seek court orders directing payment for an unpaid penalty from all of the parties who are jointly and severally liable for such a penalty, and to do so in a single proceeding and at the first possible opportunity.[20]

---

[19]Bruno argues that the SEC should be required to institute a new administrative proceeding, naming him as a party, if it wishes to impose a civil penalty on him through § 20(a).  As Bruno rightly points out, however, the SEC can assess monetary penalties in administrative proceedings only if the party has willfully participated in a violation of the securities laws.  *See* 15 U.S.C. 78u-2(a). The SEC has not claimed that Bruno participated in Barclay's violations of § 17(a) and Rule 17-a-5, nor has the SEC claimed that Bruno has "violated" § 20(a). Rather, the SEC is merely seeking payment of a financial obligation for which Bruno is jointly and severally liable under § 20(a).  Accordingly, the SEC could not seek to impose a monetary penalty on Bruno through an administrative proceeding on the basis of its § 20(a) claim, and for that reason the remedial purposes of the Exchange Act are served by our holding that the SEC can assert such a claim in a § 21(e) application instead.

[20]The *amicus* suggests that rather than claiming a right to payment from Bruno arising under § 20(a) in a § 21(e) application, the SEC could have asserted a right to payment from Bruno arising under some other state or federal statute in a separate civil action.  Because we hold that the plain language of § 20(a) made Bruno individually liable to the SEC for a debt in the amount of the unpaid penalty, and that the plain language of § 21(e) granted the District Court jurisdiction to order Bruno

V.

Following discovery and the SEC's unopposed motion for summary judgment, the District Court correctly held that the undisputed facts of this case established that Bruno was jointly and severally liable under § 20(a) for Barclay's unpaid penalty. Further, the District Court properly concluded that it had jurisdiction under § 21(e) to order Bruno to comply with his obligations under § 20(a). While we base both of these holdings primarily on the plain language of the relevant provisions, we also note that this construction of § 20(a) and § 21(e) serves the remedial purposes of the Exchange Act. In short, this construction of the relevant provisions facilitates the collection of SEC penalties in cases where people who control a person subject to an SEC penalty culpably attempt to transfer the assets of the controlled person to themselves rather than directing the controlled person to pay its penalty. Facilitating the collection of SEC penalties in such cases helps to give those penalties their full intended deterrent effect, which in turn serves the remedial purposes of the Exchange Act. Accordingly, we will affirm the judgment of the District Court.

---

to comply with his duties under § 20(a), we need not consider the availability of other remedies.