

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-16-2006

# John M Floyd Assoc v. Ocean City Home Sav

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4155

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"John M Floyd Assoc v. Ocean City Home Sav" (2006). *2006 Decisions.* Paper 199.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/199

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4155
_____

JOHN M. FLOYD & ASSOCIATES, INC.,
a Texas Corporation,

Appellant,

v.

OCEAN CITY HOME SAVINGS BANK,
a New Jersey Savings Bank.


_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 03-cv-1473)
District Judge: Honorable Joseph H. Rodriguez
Argued September 26, 2006

Before: RENDELL, CHAGARES, and ROTH, <u>Circuit</u> <u>Judges</u>.


_____

(Filed:   November 16, 2006)


<u>Counsel for Appellant</u>

Howard J. Bashman (Argued)
2300 Computer Avenue
Suite G-22
Willow Grove, PA 19090


<u>Counsel for Appellee</u>

John R. Mininno (Argued)
Mininno Law Office
475 White Horse Pike
Collingswood, NJ 08108

OPINION OF THE COURT

CHAGARES, <u>Circuit</u> <u>Judge</u>.

In 2001, appellant John M. Floyd & Associates, Inc. ("JMFA") entered into a contract with appellee Ocean City Home Savings Bank ("the Bank"). The parties' contract called for JMFA, <u>inter</u> <u>alia</u>, to make recommendations for operational changes that the Bank should implement in order to install an overdraft privilege program. JMFA did so, but the Bank was dissatisfied with these recommendations. As a result, the Bank terminated JMFA and later hired a different firm to assist it in installing an overdraft privilege program. Thereafter, JMFA sued the Bank for breach of contract and for breach of the covenant of good faith and fair dealing. The Bank counterclaimed, alleging that it was entitled to the return of a retainer it had paid JMFA.

The parties filed cross-motions for summary judgment on all claims. The District Court granted the Bank's motion and JMFA appealed this judgment. In this appeal, we conclude that the District Court properly granted summary judgment as to JMFA's claim for breach of the covenant of good faith and fair dealing. As to JMFA's breach of contract claim, however, we hold that disputed factual issues remain as to whether or the extent to which the Bank implemented JMFA's recommendations, and summary

2

judgment was therefore inappropriate on that claim. Accordingly, we will affirm in part

and reverse in part the District Court's decision, and remand for further proceedings

consistent with this opinion.

I.

As we write only for the parties, our summary of the facts is brief. In August,

2001, JMFA and the Bank entered into a contract which established a four-part procedure

by which the parties would evaluate and implement changes to the Bank's operations in

connection with its anticipated rollout of an overdraft privilege program. According to

the contract, in the "analysis" phase, JMFA would examine the Bank's account structures

and procedures. Second, in the "presentation" phase, JMFA would

> Review with management our recommended changes. . . . [JMFA] will
> identify each recommendation's impact on the bank[] . . . [, i]dentify those
> recommendations that are approved[, f]ormulate a plan and timetable for
> implementation, [and m]eet with the affected parties to review and "sell"
> the recommendations, which have been approved by management for
> implementation.

Third, in the "implementation" phase, JMFA would "[c]oordinate and assist in

implementation of approved changes." Fourth, in the "follow-up" phase, JMFA would

meet with Bank management "to review the status and results of changes, which have been

approved for implementation."

The contract goes on to state that JMFA would be compensated on a contingency

basis, and specifies how the parties would calculate JMFA's contingency fee. The

contract provides in pertinent part that: "After the recommendations have been installed

3

[JMFA] will quantify the increased income and the bank agrees to pay monthly one-third of the quantified net increase in pre-tax earnings."  The contract further states that:

> If a recommendation is not approved it will not be included in the fee calculation.  However, if any recommendation, within 24 months of the initial engagement is approved or approved as modified, or initially declined and later approved as recommended or as subsequently modified it will be included in the fee calculation.

241A.

JMFA examined the Bank's account structures and procedures and, in November, 2001, presented the Bank with a study containing 32 of JMFA's recommendations for implementing an overdraft privilege program.  Displeased with the recommendations, the Bank informed JMFA in December, 2001, that it was rejecting all of the recommendations and severing ties with JMFA.

In 2002, the Bank hired Pinnacle, another consulting service, which by the end of the year had proposed and implemented an overdraft privilege program at the Bank.  The parties dispute whether and to what degree that program corresponds with JMFA's specific recommendations.

JMFA sued the Bank for breach of contract, alleging that because the Bank implemented JMFA's recommendations, JMFA was entitled to recover its contingency fee under the contract.  JMFA also asserted a claim for breach of the covenant of good faith and fair dealing.  The Bank counterclaimed to recover the $25,000 retainer it paid to JMFA.

4

In its initial answer, the Bank admitted that it implemented JMFA's recommendations. After discovery, the parties filed cross motions for summary judgment on all claims. JMFA argued that the Bank admitted its breach by conceding that it had implemented JMFA's recommendations. In response, the Bank filed a motion to amend its answer to conform to evidence from discovery that it had not implemented JMFA's recommendations. JMFA opposed the motion, arguing that it had relied on the admission, but the District Court permitted the amendment.[1]

Shortly thereafter, the District Court granted the Bank summary judgment on both of JMFA's claims, but granted JMFA summary judgment on the Bank's counterclaim for the retainer. On the breach of contract claim, the District Court interpreted the contract as entitling JMFA to payment only for recommendations that were specific to the Bank, but not for the generic recommendations involved in implementing an overdraft privilege program. The District Court also concluded that no evidence existed to show bad faith because the contract entitled the Bank to sever ties with JMFA, and because JMFA failed to rebut the evidence that the Bank simply lost confidence in JMFA. Finally, the District Court held that JMFA was entitled to the retainer, because the contract did not allow the

---

[1]At oral argument, JMFA's counsel represented that his client was prejudiced by the District Court's decision allowing the Bank to amend its earlier answer. The record does not indicate whether, after allowing the Bank to amend its answer, the District Court permitted JMFA to take additional discovery regarding the extent to which the Bank implemented JMFA's recommendations.

Bank to get a refund except to offset JMFA's future contingency fees, which had never materialized.

JMFA has not appealed the District Court decision permitting the Bank to amend its initial answer, nor has the Bank appealed the District Court's grant of summary judgment for JMFA on the retainer issue. Thus, in this appeal we review only the District Court's decision granting the Bank's summary judgment motion on the breach of contract claim and the claim for breach of the covenant of good faith and fair dealing, and denying JMFA's summary judgment motion on those same claims.

II.

We exercise plenary review over the District Court's grant and denial of summary judgment. Creque v. Texaco Antilles Ltd., 409 F.3d 150, 152 (3d Cir. 2005). Like the District Court, we view the facts and all reasonable inferences therefrom in the light most favorable to the non-moving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006). The moving party must show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. S.E.C. v. J.W. Barclay & Co., 442 F.3d 834, 840 (3d Cir. 2006). If the moving party meets this initial burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Id. (quoting Fed. R. Civ. P. 56(e)).[2]

---

[2]The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

III.

A.

To determine the propriety of summary judgment on the breach of contract claim, we will begin by examining the plain wording of the contract.[3] The Supreme Court of New Jersey has posited that "[w]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and we must enforce those terms as written." Kutzin v. Pirnie, 124 N.J. 500, 507 (1991)(quotation omitted). See M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002)("Generally, the terms of an agreement are to be given their plain and ordinary meaning.").

In granting the Bank's motion for summary judgment on the breach of contract claim, the District Court interpreted the contract as entitling JMFA to payment only for recommendations that were specific to the Bank, but not for the generic recommendations involved in implementing an overdraft privilege program. The District Court characterized many of JMFA's recommendations as "boilerplate," noting that they were based in whole or in part on "Previous Studies conducted by [JMFA]." Based on this characterization, the District Court concluded that the Bank was entitled to summary judgment.

But whether JMFA's recommendations were "boilerplate" is immaterial. The parties' contract makes clear that if the Bank implemented "any" of JMFA's

---

[3]There is no dispute that New Jersey law governs the claims herein.

7

recommendations within 24 months of JMFA's proposal, JMFA would be entitled to compensation. In other words, the originality of JMFA's recommendations is beside the point for purposes of compensation; the only limitation on JMFA's right to recover is temporal.[4]

To show that the Bank did in fact implement some or all of JMFA's recommendations within the 24 month window, JMFA offers an expert report analyzing the Bank's financial statements which concluded that the Bank's increase in revenues was attributable to its adoption of recommendations proposed by JMFA. That report, however, is not specific about exactly which of JMFA's recommendations the Bank implemented. The Bank's expert did not appear to dispute that JFMA's recommendations were implemented by the Bank, but instead argued that most or all of JMFA's recommendations were "canned" or "generic" and contended that JMFA even "proposed a number of [accounting and monitoring] procedures that were already in place at the Bank." Thus, we are left with a dispute of fact over whether or the extent to which the Bank implemented the specific recommendations that JMFA made to the Bank, and, therefore, neither party is entitled to summary judgment on JMFA's breach of contract claim.[5]

---

[4]The parties agree that this limitation is no bar to JMFA's ability to recover here, as it is undisputed that the Bank implemented Pinnacle's recommendations within 24 months of JMFA's proposal.

[5]Judge Rendell would hold that this was a failure of proof on the part of JMFA as to precisely which recommendations – if any – were in fact adopted as part of the Pinnacle program, rather than an issue of fact, but is content to having the district Court address this issue upon remand.

B.

JMFA's claim for breach of the covenant of good faith and fair dealing is another matter. The Supreme Court of New Jersey has warned that such a claim "should not be permitted to be advanced in the abstract and absent an improper motive." Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001). As the District Court correctly noted, JMFA has adduced no evidence of bad motive or intention on the part of the Bank. In this regard, the parties' contract explicitly allowed the Bank to end its relationship with JMFA. Moreover, the Bank gave uncontroverted, legitimate reasons for terminating JMFA; namely, that JMFA presented proposals contrary to the Bank's express wishes. For example, it is undisputed that JMFA proposed a semi-automated system despite the fact that the contract explicitly required JMFA's recommendations to be compatible with a fully automated system. The Bank told JMFA about these concerns before JMFA made its recommendations, but JMFA nonetheless submitted recommendations for a semi-automated system.

For these reasons, there is no evidence that the Bank terminated JMFA in bad faith, and we therefore affirm the District Court's grant of summary judgment to the Bank on JMFA's claim for breach of the covenant of good faith and fair dealing.

IV.

For the foregoing reasons, we will affirm in part and reverse in part, and remand the matter to the District Court for further proceedings consistent with this opinion.

9